1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KELSEY A. DAVIS,<br><br>                              Plaintiff,<br><br>        v.<br><br>MICHAEL J. ASTRUE, Commissioner of<br>Social Security Administration,<br><br>                              Defendant. | CASE NO.  C09-5414FDB<br><br>REPORT AND RECOMMENDATION<br><br> Noted for May 21, 2010 |

        This matter has been referred to Magistrate Judge J. Richard Creatura pursuant to 28

U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews,

Secretary of  H.E.W. v. Weber, 423 U.S. 261 (1976).  This matter has been briefed, and after

reviewing the record, the undersigned recommends that the Court affirm the administration's

decision.

### FACTUAL AND PROCEDURAL HISTORY

        On December 31, 1998, plaintiff was 31 years old when she allegedly became disabled.

Tr. 20, 57.  Plaintiff's teenage years were atypical.  She reported drinking alcohol and getting

drunk twice a week, in addition, she smoked marijuana and used cocaine occasionally from ages

REPORT AND RECOMMENDATION - 1

13 to 17.  Tr. 231.  She dropped out of school in the 8th grade.  Tr. 232.  She later earned a GED degree.  Tr. 697.  Plaintiff has work experience in food service, convenience stores, and sales. Id.  Her last significant job was working for Gull Industries as a sales and service representative. Tr. 697.  She quit that job due to a pregnancy with her second child.  Tr. 699.  Other than working at a convenience store in 1997, plaintiff has not been gainfully employed since working as a sales representative.  Tr. 97, 142.

Plaintiff filed applications for Disability Insurance Benefits (for which she is insured through December 31, 2002) and Supplemental Security Income on January 8, 2005.  Tr. 669-671.  She alleges a disability since December 31, 1998, due to "prior sexual abuse and domestic violence, extreme fatigue, anxiety, depression, PTSD, arthritis in spine/hands, degenerated disk disease, neck problems, pinch nerve in right arm, memory problems."  Tr. 57, 63.

Plaintiff's applications were denied at the initial and reconsideration levels.  Tr. 48.  The matter was presented to an administrative law judge ("ALJ"), who held a hearing on September 26, 2007.  Tr. 686-720.  On March 28, 2008, the ALJ issued a written decision, denying plaintiff's applications for benefits.  Tr. 15-28.  Despite several severe impairments, the ALJ found plaintiff retained the ability to perform work as an office helper or inspector and hand packager.  Tr. 27.

Plaintiff requested further administrative review of the ALJ's decision, but on May 22, 2009, the Administration's Appeals Council denied the request.  Tr. 6-8.  The ALJ's decision is the final administrative decision subject to judicial review.

Now the matter is before the court.  In her Opening Brief (Doc. 16), plaintiff developed the following four arguments: (1) The ALJ erroneously failed to consider all of Ms. Davis's severe impairments at step-two of the sequential evaluation process; (2) The ALJ erroneously discounted the

REPORT AND RECOMMENDATION - 2

1    opinions of Dr. Hiltz and Dr. Corley, her treating physicians and Dr. Neims without providing

2    specific and legitimate reasons for discounting their opinions; (3) The ALJ failed to include all of

3    Ms. Davis's exertional and non-exertional impairments in hypothetical questions to the vocational

4    expert; and (4)The ALJ did not follow SSR 96-8p in assessing Ms. Davis's residual functional

5    capacity.

6                                        **DISCUSSION**

7            Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

8    social security benefits when the ALJ's findings are based on legal error or not supported by

9    substantial evidence in the record as a whole.  Bayliss v. Barnhart, 427 F.3d 1211, 1214 (9th Cir.

10   2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such

11   relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

12   Richardson v. Perales, 402 U.S. 389, 401 (1971); Magallanes v. Bowen, 881 F.2d 747, 750 (9th

13   Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical

14   testimony, and resolving any other ambiguities that might exist.  Andrews v. Shalala, 53 F.3d

15   1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may

16   neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  Thomas

17   v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than

18   one rational interpretation, it is the Commissioner's conclusion that must be upheld.  Id.

19           Plaintiff bears the burden of proving that she is disabled within the meaning of the Social

20   Security Act (the "Act").  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999).  The Act

21   defines disability as the "inability to engage in any substantial gainful activity" due to a physical

22   or mental impairment that has lasted, or is expected to last, for a continuous period of not less

23   than twelve months.  42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).  Plaintiff is disabled under the

24   Act only if her impairments are of such severity that she is unable to do her previous work, and

REPORT AND RECOMMENDATION - 3

cannot, considering her age, education, and work experience, engage in any other substantial

gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B);

Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th  Cir. 1999).

The Commissioner has established a five-step sequential evaluation process to determine

whether an individual is disabled as defined under the Social Security Act.  20 C.F.R. §§

416.920, 404.1520.  The United States Supreme Court recognized the validity of this analysis in

Bowen v. Yuckert, 482 U.S. 137, 140 (1987), and it remains the proper approach for analyzing

whether a claimant is disabled.

This five-step process is summarized as follows.  First, the Commissioner considers

whether the claimant is currently engaged in substantial gainful activity.  If he is not, the

Commissioner next considers whether the claimant has a "severe impairment" which

significantly limits his physical or mental ability to do basic work activities.  If the claimant has

such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant

has an impairment that is listed in Appendix 1 of the regulations.  If the claimant has such an

impairment, the Commissioner will consider him disabled without considering vocational factors

such as age, education, and work experience; the Commissioner presumes that a claimant who is

afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming

the claimant does not have a listed impairment, the fourth inquiry is whether, despite the

claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the Commissioner then determines

whether there is other work which the claimant could perform.

Plaintiff has the burden of proof as to the first four steps; the Commissioner has the

burden of proof on the fifth and final step. Bowen, 482 U.S. at 146 n. 5.

REPORT AND RECOMMENDATION - 4

1

2        ***1.        The ALJ Properly Evaluated Plaintiff's Severe Impairments At Step-Two***

3               Step-two of the administration's evaluation process requires the ALJ to determine

4        whether an impairment is severe or not severe.  20 C.F.R. §§ 404.1520, 416.920 (1996).  The

5        step-two determination of whether a disability is severe is merely a threshold determination of

6        whether the claimant is able to perform past work.  Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th

7        Cir. 2007).  A finding that a claimant is severe at step-two only raises a prima facie case of a

8        disability.  Id.  *See also* Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir.1999).

9

10              The Social Security Regulations and Rulings, as well as case law applying them, discuss

11       the step-two severity determination in terms of what is "not severe."  According to the

12       Commissioner's regulations, "an impairment is not severe if it does not significantly limit [the

13       claimant's] physical ability to do basic work activities,"  20 C.F.R. §§ 404.1520(c),

14       404.1521(a)(1991).  Basic work activities are "abilities and aptitudes necessary to do most jobs,

15       including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or

16       handling." 20 C.F.R. § 140.1521(b); Social Security Ruling 85-28 ("SSR 85-28").  An

17       impairment or combination of impairments can be found "not severe" only if the evidence

18       establishes a slight abnormality that has "no more than a minimal effect on an individual's ability

19       to work."  Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988)(*adopting* SSR 85-28).

20

21              Here, the ALJ found the following severe impairments: nicotine addiction, chronic

22       obstructive pulmonary disease, degenerative disc disease, depression and anxiety. (Tr. 20)

23       Plaintiff argues the ALJ should have also found the following severe impairments: right hip pain,

24       bilateral leg pain and numbness, chronic right shoulder and arm pain, bilateral arm pain and

25       numbness in her fingers, right hand pain, chronic right pariscapular and lateral epicondylitis,

26

REPORT AND RECOMMENDATION - 5

chronic neuropathic pain, claudication in her legs, severe anemia, interstitial cystitis, headaches, mild right ulnar mononeuropathy, pelvic pain, PTSD and mild interstitial lung disease as severe impairments.  Opening Brief at 5-6.  Plaintiff also identifies fatigue and shortness of breath as additional impairments that the ALJ should have found severe at step two.  After reviewing the record, the undersigned is not persuaded by plaintiff's argument.

As discussed below, the ALJ properly evaluated the evidence.  In the process the ALJ properly addressed plaintiff's allegations of disability and determined which impairments imposed work related restrictions.  For instance, the ALJ found that symptoms related to plaintiff's alleged PTSD were better explained by the diagnoses of anxiety and depression.  Tr. 22.  Similarly, plaintiff's lung disease, symptoms of fatigue and shortness of breath, were incorporated into the ALJ's analysis of plaintiff's nicotine addiction.  Tr. 20-21, 25-26.

In addition, the ALJ found that Plaintiff's interstitial lung disease was attributable to her nicotine addiction, also an impairment that the ALJ found severe (Tr. 20-21). Dr. Corley's opinion supported this finding (Tr. 667-68).  Thus, the ALJ fully accounted for Plaintiff's interstitial lung disease in his step-two finding.  Furthermore, symptoms are not impairments. SSR 96-4p, available at 1996 WL 374187; Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005).  Pain is a symptom, not an impairment.  20 C.F.R. § 404.1529; SSR 96-3p; SSR 96-7p, available at 1996 WL 374186; SSR 96-8p, available at 1996 WL 374184; SSR 96-9p, available at 1996 WL 374185; SSR 02-1p, available at 2000 WL 628049.  Thus, plaintiff's complaints of hip pain, leg pain and numbness, neuropathic pain, headaches, claudication, and pelvic pain were also properly considered by the ALJ as evidence of possible symptoms, not as separate impairments.  Tr. 21, 24.  In particular, the ALJ found that plaintiff's pain complaints and mild ulnar neuropathy were likely symptoms of degenerative disc disease, one of the impairments the ALJ found to be severe.  Tr. 21.

REPORT AND RECOMMENDATION - 6

In sum, the ALJ properly considered the medical evidence and analyzed plaintiff's severe and non-severe impairments at step-two.  In turn, the ALJ included plaintiff's impairments and associated symptoms in his analysis of plaintiff's residual functional capacity.  As another final example, plaintiff states the ALJ failed to include epicondylitis, i.e., "tennis elbow," as a severe impairment, but the ALJ did limited her from performing work that required "frequent handling and fingering with the right hand," as opposed to "unlimited handling and fingering with the left hand," and only "occasional overhead reaching."  Tr. 23.  This court finds no error in the ALJ's step-two findings or analysis.

## 2. *The ALJ Properly Evaluated The Medical Opinion Evidence*

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir.1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record."  Id. at 830-31.  However, the ALJ "need not discuss all evidence presented" to him or her.  Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir.1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected."  Id.

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant.  Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole."  Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir.2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician."

REPORT AND RECOMMENDATION - 7

Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial

evidence if "it is consistent with other independent evidence in the record."  Id. at 830-31;

Tonapetyan, 242 F.3d at 1149.  The ALJ "may reject the opinion of a non-examining physician

by reference to specific evidence in the medical record."  Sousa v. Callahan, 143 F.3d 1240,

1244 (9th Cir. 1998).

　　　The ALJ is entitled to resolve conflicts in the medical evidence.  Sprague v. Bowen, 812 F.2d

1226, 1230 (9th Cir. 1987).  He may not, however, substitute his own opinion for that of

qualified medical experts.  Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982).  If a

treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this

opinion without providing "specific and legitimate reasons" supported by substantial evidence in

the record for doing so.  Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983).  "The opinion of

a non-examining physician cannot by itself constitute substantial evidence that justifies the

rejection of the opinion of either an examining physician or a treating physician."  Lester, 81

F.3d at 831.  In Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989), the Ninth Circuit

upheld the ALJ's rejection of a treating physician's opinion because the ALJ relied not only on a

non-examining physician's testimony, but in addition, the ALJ relied on laboratory test results,

contrary reports from examining physicians and on testimony from the claimant that conflicted

with the treating physician's opinion.

　　　Here, plaintiff argues the Appeals Council erred when it evaluated the medical evidence,

specifically the opinions of treating physicians, Dr. Hiltz and Dr. Corley, and the examining

psychologist, Dr. Neims.  After reviewing the record, the undersigned finds no errors in the ALJ's

evaluation of the medical evidence.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

### (a) Treating Physicians Dr. Hiltz and Dr. Corely

Dr. Hiltz is a psychologist who treated plaintiff over a period of time.  In October 2004, Dr. Hiltz diagnosed plaintiff with Major Depressive Disorder, Panic Disorder, r/o PTSD; he stated that her Global Assessment of Functioning score was "+50".  Tr. 232-33.  A GAF score of 50 indicates that an individual would be unable to hold a job.  A GAF of more than 50 indicates an individual with, at most, some moderate symptoms (e.g. flat affect, circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers). *American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* 34 (4th ed. Text Revision 2000).

Dr. Corley is plaintiff's treating pulmonologist.  On October 3, 2007, Dr. Corley wrote a letter regarding "plaintiff's pulmonary condition and potential contribution of ITP to bouts of pneumonia."  Tr. 667.  Dr. Corley explained that plaintiff's pulmonary scarring and bouts of bronchitis and/or pneumonia are most likely directly related to her ongoing cigarette smoking.  *Id.* Dr. Corley unequivocally stated, "[I]t is my medical opinion that should Ms. Davis stop smoking she will in fact have significant improvement in her pulmonary function as well as prevent further damage."  Id.

The ALJ addressed both opinions in his decision.  The ALJ specifically referred to Dr.Hiltz's examination to support finding that plaintiff's depression and anxiety are severe impairments, and gave the opinion great weight.  Tr. 21-22, 25.  However, the ALJ clearly did not accept Dr. Hiltz's belief that plaintiff is unable to work.  Instead, the ALJ found the state agency functional analysis more appropriate, supporting the ALJ's finding that plaintiff is capable of performing simple repetitive tasks.  Tr. 26.  The ALJ explained that the state agency opinion is "based on the claimant's documented, severe impairments, and is supported by the objective record.  Id.

REPORT AND RECOMMENDATION - 9

The ALJ gave Dr. Corley's opinion significant weight, stating: "As the claimant's treating physician, Dr. Corley is in the best position to assess the claimant's impairment and the ability to improve pulmonary functioning." Tr. 25. The ALJ noted plaintiff's potential to improve her condition if she quit smoking, but nevertheless stated that her pulmonary impairment "is not so limiting that she would [be] incapable of performing all basic work activities." *Id*.

After reviewing the record, the undersigned finds no error in the ALJ's evaluation of Dr. Hiltz's and Dr. Corley's medical opinions. The ALJ did not reject the opinions to the extent that plaintiff alleges and for those portions that were not given full credit, the ALJ provide sufficient reasons to not adopt the comment or opinion. For instance, the ALJ did not accept Dr. Hiltz's opinion that plaintiff's condition rendered her unable to work. This decision is within the purview of the ALJ, and he properly explained he was more persuaded by the contrary evidence in the record.

### (b) Examining Psychologist, Dr. Neims

Dr. Neims examined and evaluated plaintiff on January 12, 2005. Tr. 203-16. Dr. Neims found plaintiff markedly impaired in three areas of social functioning and opined that she had a chronic mental illness. Tr. 205-06.

Plaintiff does not develop any argument that the ALJ improperly discredited Dr. Neims, other than commenting that the Dr. Neims' opinion is consistent with the opinion of Dr. Hiltz. Opening Brief at 12. Because the ALJ properly evaluated Dr. Hiltz's opinion there is no apparent need to address Dr. Neims' opinion. Nonetheless, the ALJ properly considered the opinion. The ALJ discounted the opinion because it was brief and conclusory, i.e., provided on a check-box form and inconsistent with plaintiff's activities of daily living. Both reasons are supported by the record. The ALJ properly gave only "limited" weight to Dr. Neims' opinion.

In sum, the ALJ properly evaluated the medical opinion evidence.

REPORT AND RECOMMENDATION - 10

*3.*     ***The ALJ Properly Relied On Vocational Expert Testimony***

At step-five of the administrative process, the burden of proof shifts to the

Commissioner.  The fifth step is divided into two parts. First, the Commissioner must assess the

claimant's job qualifications by considering her physical ability, age, education, and work

experience. Second, the Commissioner must determine whether jobs exist in the national

economy that a person having the claimant's qualifications could perform.  42 U.S.C. §

423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460,

103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).   The Commissioner must produce evidence of other jobs

existing in significant numbers in the national economy that plaintiff could perform in light of

her age, education, work experience, and residual functional capacity.  Thomas v. Barnhart, 278

F.3d 947, 955 (9th Cir.2002); Tackett v. Apfel,180 F.3d 1094,1099 (9th Cir. 1999); Roberts v.

Shalala, 66 F.3d 179, 184 (9th Civ. 1995).  In Tackett, the court noted "there are two ways for

the Commissioner to meet the burden of showing that there is other work in 'significant

numbers' in the national economy that claimant can perform: (a) by the testimony of a vocational

expert, or (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, subpt. P,

app. 2." Id.  If the ALJ relies on a vocational expert, the testimony must be "in response to a

hypothetical that sets out all the limitations and restrictions of the claimant" properly supported

by substantial evidence.  Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir.1995).

Directly reflecting plaintiff's earlier step-two argument, plaintiff argues the ALJ's

hypothetical failed to include plaintiff's right hip pain, bilateral leg pain and numbness, chronic right

shoulder and arm pain, bilateral arm pain and numbness in her fingers, right hand pain, chronic right

pariscapular and lateral epicondylitis, chronic neuropathic pain, claudication in her legs, fatigue due

to severe anemia, shortness of breath due to chronic obstructive pulmonary disease, absences due to

REPORT AND RECOMMENDATION - 11

headaches, mild right ulnar mononeuropathy and pelvic pain as severe impairments.  Plaintiff consequently argues the ALJ's reliance on the vocational expert's testimony is flawed.

As discussed above, this court found no error in the ALJ's step-two analysis.  The court also notes that a finding of a severe impairment at step two of the disability determination process does not necessarily require inclusion of that impairment in the hypothetical question posed to the expert.  A step-two determination is not dispositive at step five.  Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007).  Because substantial evidence supported the ultimate hypothetical question posed to the vocational expert, there was no error in the ALJ's subsequent reliance on the expert's testimony.

### 4.    The ALJ Properly Considered Plaintiff's Residual Functional Capacity

Between steps three and four of the five-step administrative evaluation process, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity.  20 C.F.R. § 416.920(e).  The ALJ's determination of plaintiff's residual functional capacity must be supported by substantial evidence.  Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999).  Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary.  SSR 96-8p.

Plaintiff argues the ALJ failed to properly assess plaintiff's residual functional capacity.  Specifically, plaintiff states the ALJ did not address the combined effect of chronic pain, pain medication, depression, anxiety, migraine headaches, poor memory, concentration, fatigue, shortness of breath, limited use of upper extremities, chronic back pain and bilateral leg pain.  This is the same argument that plaintiff makes regarding step-two, and as discussed above, the court found no error in the ALJ's assessment of plaintiff's severe impairments at step-two.

REPORT AND RECOMMENDATION - 12

Moreover, plaintiff argues the residual functional capacity finding does not account for all of the medical opinion evidence, but as also discussed above, the ALJ properly considered the medical evidences.

Because plaintiff's argument that ALJ improperly assessed her residual functional capacity assessment is premised on the same arguments dismissed above, the court finds no error in the ALJ's analysis of plaintiff's residual functional capacity.

<u>**CONCLUSION**</u>

Based on the foregoing discussion, the Court should affirm the administrative decision. Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on May 21, 2010, as noted in the caption.

Dated this 29th day of April, 2010.


J. Richard Creatura
United States Magistrate Judge